FILED _____ ENTERED
_____ LODGED _____ RECEIVED

MAY 2 9 2018

CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
NIGHT DROP BOX

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## –Northern Division–

ROBERT CANDY; ANIMAL PARK,
CARE AND RESCUE, INC.; and TRI
STATE ZOOLOGICAL PARK OF
WESTERN MARYLAND, INC.

*Plaintiffs*

–v–

PEOPLE FOR THE ETHICAL
TREATMENT OF ANIMALS, INC.;
BRITTANY PEET; HOLLY BROWN;
CASEY BROWN; KRISTINE STASER;
DELCIANNA WINDERS; COLIN
HENSTOCK; and CHRIS FONTES,

*Defendants.*

**MJG 18 CV 1549**

Case No. _____
Action Filed: May 23, 2018

### DEFENDANT PEOPLE FOR THE ETHICAL
### TREATMENT OF ANIMALS, INC.'S NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant People for the

Ethical Treatment of Animals, Inc. ("PETA") removes this action from the Circuit

Court for Allegany County, Maryland to the United States District Court for the

District of Maryland. As grounds for removal, PETA states as follows:

### INTRODUCTION

1.      Plaintiffs Robert Candy; Animal Park, Care and Rescue, Inc.; and Tri-

State Zoological Park of Western Maryland, Inc. brought this action against PETA,

and several of its attorneys, employees, and volunteers. Plaintiffs allege various

torts related to PETA's efforts to monitor the conditions in which Plaintiffs confine

and exhibit numerous species of animals at Tri-State Zoological Park of Western Maryland, Inc. ("Tri-State") and Animal Park, Care & Rescue, Inc. ("Animal Park") (together "Tri-State Zoo"), an unaccredited zoo owned and operated by Plaintiff Robert Candy in Cumberland, Maryland, and to statements purportedly made regarding the conditions at Tri-State Zoo. Plaintiffs' asserted claims relate to PETA's investigations, public interest campaigns, and correspondence with government agencies regarding the conditions at Tri-State Zoo, as well as PETA's July 2017 citizen lawsuit against the Plaintiffs, which alleges ongoing violations of the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544, and its implementing regulations ("ESA Action"), and statements allegedly made on social media by Defendant Kristine Staser, an alleged resident of Ohio who has no official affiliation with PETA.[1]

2.     Because PETA, its employees, attorneys, and Ms. Staser are citizens of States other than Maryland, Plaintiffs joined two Maryland citizens—Holly Brown and Casey Brown (the "Brown Sisters")—who allegedly "visited the Plaintiffs' facility" and "took photographs" of a lion in an "emaciated condition." Complaint ¶ 27. Plaintiffs joined the Brown Sisters solely for the purpose of destroying diversity of citizenship. As discussed below, Plaintiffs' allegations against the Brown Sisters are patently deficient. And even after resolving all issues

---

[1] The ESA Action, *People for the Ethical Treatment of Animals, Inc.* v. *Tri-State Zoological Park of Western Maryland, Inc., et al.*, Case No. 1:17-cv-02148 (D. Md.), is currently pending before the Honorable Marvin J. Garbis.

-2-

of fact and law in Plaintiffs' favor, it is clear that Plaintiffs have not alleged *any possible* claim against the Brown Sisters.

3.      Accordingly, there is federal diversity jurisdiction as to the properly joined Defendants.

## BACKGROUND

4.      On May 23, 2018, Plaintiffs filed a Complaint in the Circuit Court of Allegany County, Maryland, (attached hereto as Exhibit A) against PETA, its attorneys Delcianna Winders and Brittany Peet, its employees Colin Henstock and Chris Fontes, and non-employee Kristine Staser (collectively the "Diverse Defendants"), as well as the Brown Sisters.

5.      The Complaint—which was filed shortly after the close of fact discovery in the ESA Action—is filled with bald assertions and conclusory statements. The Complaint largely attacks PETA, its employees, and volunteers' exercise of First Amendment rights. And it is intended to intimidate and silence critics of Plaintiffs' facility and extort a settlement in the ESA Action.

6.      Plaintiffs purport to assert claims against the Brown Sisters, alleging that "[u]pon information and belief . . .[they] were volunteers who were asked to act as investigators and were compensated or reimbursed for expenses," Complaint ¶ 25; "are not licensed as private investigators . . . [and] therefore, committed a criminal misdemeanor by undertaking an investigation of the Plaintiffs' facility," *id.* ¶ 26; and "[d]uring 2017, Defendants Brown visited the Plaintiffs' facility under false pretenses and took photographs of [a lion]," *id.* ¶ 27.

– 3 –

7.     The Complaint asserts five causes of action and civil conspiracy against "all Defendants," presumably including the Brown Sisters: (1) defamation; (2) false light; (3) tortious interference with business relations and prospective advantage; (4) civil conspiracy; (5) trespass; (6) and fraud. Plaintiffs do not allege anything that remotely suggests that there is a possibility of even one of these claims succeeding against the Brown Sisters for having taken photographs of a now deceased lion.

8.     The filing of the Complaint is but one example of Plaintiffs' vexatious filings that are an apparent attempt to drive up litigation costs between the parties and undermine the ESA Action. Shortly after filing the ESA Action, Defendants filed a baseless motion to dismiss, which was denied, and an unwarranted motion to disqualify the presiding judge, which was also denied. *See* Motion to Dismiss, *People for the Ethical Treatment of Animals, Inc.* v. *Tri-State Zoological Park of Western Maryland, Inc.* et al., No. 1:17-cv-02148-MJG (D. Md. July 31, 2017), ECF No. 15 (hereinafter "*PETA* v. *Tri-State*"); Motion for Disqualification of Presiding Judge, *PETA* v. *Tri-State*, No. 1:17-cv-02148-MJG (D. Md. July 31, 2017), ECF No. 25. Plaintiffs' claim that the ESA Action "was not filed in good faith," Complaint ¶ 45, is unsupportable, especially in light of the fact that the U.S. District Court denied their motion to dismiss the pending action. Memorandum and Order re: Motion to Dismiss, *PETA* v. *Tri-State*", No. 1:17-cv-02148-MJG (D. Md. July 31, 2017), ECF No. 23.

9.      Since the filing of the Complaint, there have been no further proceedings in the Circuit Court.

10.     After filing this Notice of Removal, PETA will promptly inform Plaintiffs and any other adverse parties, in writing, of this Notice and will file a copy of this Notice with the Clerk of the Circuit Court for Allegany County in accordance with 28 U.S.C. § 1446(d). A copy of the state court docket and all documents filed in the state court action (other than the Complaint) is attached hereto as Exhibit B.

## VENUE AND JURISDICTION

11.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 100(1), 1391, 1441(a), and 1446(a) because the Circuit Court for Allegany County, Maryland, where this action was filed, is a state court within the Northern Division of the United States District for the District of Maryland.

12.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because: (1) there is complete diversity of citizenship between Plaintiffs and all properly joined Defendants; (2) the amount in controversy exceeds $75,000, exclusive of interests and costs; and (3) all other requirements for removal have been satisfied.

13.     To the extent that Plaintiffs purportedly attempt to sue non-diverse defendants, those defendants have been fraudulently joined. There is no possibility of Plaintiffs successfully proving their claims against the non-diverse defendants

and Plaintiffs joined those defendants for the sole purpose of defeating PETA's removal rights.

## DISCUSSION

I.   **There is Complete Diversity of Citizenship Between Plaintiffs and Defendants Not Joined for the Sole Purpose of Frustrating Removal.**

14.    There is complete diversity of citizenship here because Plaintiffs are all Maryland citizens and all of the Diverse Defendants are citizens of States other than Maryland, *see* Part I.A *infra*; and because the citizenship of the Brown Sisters should be ignored for the purposes of diversity jurisdiction as they have been fraudulently joined in this action, *see* Part I.B *infra*.

### A. Complete Diversity Exists but for the Fraudulently-Joined Brown Sisters.

#### 1. Plaintiffs Are Citizens of Maryland.

15.    Plaintiff Robert Candy is domiciled in Allegany County, Maryland. Mr. Candy is and was at all relevant times the registered agent and principal of Tri-State Zoological Park of Western Maryland, Inc. and Animal Park, Care and Rescue, Inc.

16.    For purposes of diversity jurisdiction, a corporation is "a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business." 28. U.S.C. § 1332(c)(1).

17.    Applying these principles, Plaintiff Tri-State and Animal Park are citizens of Maryland.

18.    Plaintiff Tri-State is a Maryland corporation with its principal place of business in Cumberland, Maryland.

19.    Plaintiff Animal Park is a Maryland corporation with its principal place of business in Cumberland, Maryland.

**2. None of the Diverse Defendants Are Citizens of Maryland.**

20.    Defendant PETA is a Virginia non-stock corporation and animal protection charity pursuant to Section 501(c)(3) of the Internal Revenue Code with its principal place of business in Norfolk, Virginia.

21.    Defendant Brittany Peet is domiciled in Washington, D.C. Ms. Peet is Director of Captive Animal Law Enforcement for the Foundation to Support Animal Protection, also known as the PETA Foundation ("PETA Foundation"). The PETA Foundation is a Delaware exempt corporation with its principal place of business in Norfolk, Virginia.

22.    Defendant Delcianna Winders is domiciled in Oregon. Ms. Winders is Vice President and Deputy General Counsel for the PETA Foundation.

23.    Defendant Colin Henstock is domiciled in Virginia. Mr. Henstock is an employee of PETA.

24.    Defendant Chris Fontes is domiciled in Virginia. Mr. Fontes is an employee of PETA.

25.    Defendant Kristine Staser is, according to the allegations of the Complaint, a resident of Ohio.

**B. The Brown Sisters Are Fraudulently Joined and Their Citizenship Should Be Ignored.**

*26.*    Even where the face of a complaint shows a lack of complete diversity, removal based on diversity jurisdiction is nonetheless proper where there is no

possibility of the plaintiff successfully proving his claims against the non-diverse defendants or the non-diverse defendants are fraudulently joined. *See McFadden* v. *Fed. Nat'l Mortg. Ass'n*, 525 F. App'x 223, 227 (4th Cir. 2013).

27.     To show that a non-diverse defendant has been fraudulently joined, the removing party has the burden of establishing:

> that either (1) there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or (2) there has been outright fraud in the plaintiff's pleading of jurisdictional facts. . . . The defendant must show that the plaintiff cannot establish a claim against the non-diverse defendant even after resolving all issues of fact and law in the plaintiff's favor. In determining whether joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available.

*Riverdale Baptist Church* v. *Certainteed Corp.*, 349 F. Supp. 2d 943, 947 (D. Md. 2004) (internal citations and quotation marks omitted).

28.     Plaintiffs' allegations against the Brown Sisters are so patently threadbare as to leave no doubt that Plaintiffs have no intention to prosecute any claims against them. Rather, the Brown Sisters were added to the case solely as a means to defeat diversity jurisdiction. *See, generally, Martin* v. *Norfolk & W. Ry. Co.*, 43 F.2d 293, 295 (4th Cir. 1930) ("when the defendant proffers facts "lead[ing] to the rational conclusion ... that the joinder was made without any purpose to prosecute the action in good faith against the resident defendant and with the purpose of fraudulently defeating the right of removal, the right of removal should be sustained.").

29.     All of Plaintiffs' claims against the Brown Sisters arise from the bare fact that they allegedly took photographs of the lion Mbube "**during 2017**[.]" *See*

– 8 –

Complaint ¶ 27 (emphasis added).[2] Due to what the Plaintiffs allege was an illness, the lion was in an "emaciated condition." *Id.* ¶ 27. Defendant PETA, presumably upon seeing the photographs, complained to the U.S. Department of Agriculture ("USDA") about the condition of the lion, which allegedly resulted in "trauma and distress to the lion, caused by PETA." *Id.* ¶ 27. PETA also allegedly "published the photo" of the lion, "taken surreptitiously by an undercover agent believed to have been Defendant Brown." *Id.* ¶ 30.

30.     Plaintiffs allege "[u]pon information and belief, the Browns were volunteers who were asked [by PETA] to act as investigators and were compensated or reimbursed for expenses." *Id.* ¶ 25. Plaintiffs allege further that "[u]pon information and belief" the Brown Sisters "are not licensed as private investigators, but were required to be so by the laws of the State of Maryland, therefore, committed a criminal misdemeanor by undertaking an investigation of the Plaintiffs' facility." *Id.* ¶ 26.

31.     Plaintiffs do not allege that the photographs of the lion were misleading in any way. Nor do they contend that the Brown Sisters published these photos or any misleading statements to the public. As the Complaint makes clear, the Brown Sisters acted merely as volunteers or agents of PETA. Any alleged distress to the lion was caused solely by PETA's alleged conduct, i.e., PETA's complaint to the USDA. *Id.* ¶¶ 27, 25.

---

[2] Plaintiffs' allegation that the Brown Sisters took photographs of the lion Mbube in 2017 (long after death) is likely not a scrivener's error because a one-year statute of limitations applies to defamation actions in Maryland. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-105.

32.    Based on these facts, Plaintiffs cannot possibly state a claim against the Brown Sisters. As an initial matter, in the ESA Action, Plaintiff Robert Candy verified interrogatory responses stating that the lion Mbube "resided at the facility from March 21, 2001 to December 15, 2016." Exhibit C.[3] Because the lion was not at Tri State's premises "during 2017," the Brown Sisters could not have engaged in the alleged conduct of photographing the lion during that time as alleged in Complaint ¶ 27.

33.    Although the Court need no further grounds for finding that Plaintiffs cannot possibly recover against the Brown Sisters under the facts alleged in the Complaint, additional reasons, demonstrated below, support a finding that Counts I through VI against the resident defendants are fatally defective.

### 1. Counts I, II, and III Share a Common Fatal Defect.

34.    Counts I (defamation), II (false light) and III (tortious interference with business relations/prospective advantage) all share one common defect: they seek to impose vicarious liability upon an alleged agent for the conduct and alleged harm caused by the alleged principal. Plaintiffs do not allege that taking photographs of the lion caused Plaintiffs any harm. As the Complaint makes clear that the Brown Sisters' role was limited to acting as volunteers or agents of PETA in taking these photographs. Plaintiffs do not allege that the Brown Sisters

---

[3] "[I]n determining whether an attempted joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." *Mayes* v. *Rapoport*, 198 F.3d 457, 464 (4th Cir.1999) (internal quotations and citations omitted).

published the photos or make any statements to the public about what they observed or what the photos depict. Any adverse consequences alleged in the Complaint flowed solely from PETA's subsequent publication of these photographs to the USDA, and PETA's descriptions of the lion's appearance in these photographs.

35. As a result, there is no possibility of Plaintiffs' recovery on Counts I, II and III against the Brown Sisters. The law is clear that individual liability upon volunteer agents cannot arise from the subsequent acts of a principal over whom the agents have no control or authority. *See, e.g., Farber* v. *Brock & Scott, LLC*, 2016 WL 5867042, at *4 (D. Md. Oct. 6, 2016) ("An agent is not subject to liability for torts committed by the agent's principal that do not implicate the agent's own conduct; there is no principle of *'respondeat inferior,'*" quoting Restatement (Third) of Agency § 7.01 cmt. d (2006)); *United Magazines Co.* v. *Murdoch Magazines Distribution, Inc.*, 353 F. Supp. 2d 433, 441 (S.D.N.Y. 2004) (under principles of tort law, an agent is not liable for its principal's alleged tortious conduct); *Flaherty* v. *Baybank Merrimack Valley, N.A.*, 808 F. Supp. 55, 61 (D. Mass. 1992) (granting summary judgment "because plaintiffs have offered no legal support for their 'respondeat inferior' theory that the attorney agents are somehow vicariously liable for the tortious acts of their principals").

## 2. Plaintiffs Do Not Allege Defamatory Conduct Attributable to the Brown Sisters.

36. The Complaint alleges no discernable defamatory conduct attributable to the Brown Sisters that would entitle Plaintiffs to relief under Count I.

– 11 –

Defamation requires that "the defendant made a defamatory statement to a third person; that the statement was false; that the defendant was legally at fault in making the statement; and that the plaintiff thereby suffered harm." *Gohari* v. *Darvish*, 363 Md. 42, 53, 767 A.2d 321, 327 (2001).

37.     There is not even the proverbial "glimmer of hope" for Plaintiffs to establish these elements. Plaintiffs have not identified any false statements made by the Brown Sisters. Plaintiffs' allegations about alleged defamatory actions by "all Defendants" fall short of ascribing any defamatory conduct to the Brown Sisters that would entitle the Plaintiffs to relief. *See, e.g., Jackson* v. *Warning*, 2016 WL 7228866, at *4 (D. Md., Dec. 13, 2016) (defamation claims not viable where plaintiff failed to specify which defendants made which defamatory statements, and instead alleged in shotgun fashion that "[a]ll of the named defendants have" engaged in defamatory conduct); *Velencia* v. *Drezhlo*, 2012 WL 6562764, at *8 (D. Md. Dec. 13, 2012) (defamation claims fatally defective where plaintiff failed to allege the date(s) on which alleged defamatory statements were made and the persons to whom they were communicated).

### 3. The Complaint Does Not Allege Any Discernable False Light Invasion of Privacy Attributable to the Brown Sisters.

38.     There also is no possibility that Plaintiffs can recover against the Brown Sisters on Count II. None of the conduct attributed to them amounts to false light invasion of privacy. The Complaint is bereft of any facts alleging that the photos of the lion attributed false characteristics, conduct, or beliefs to the Plaintiffs, or that they were misleading in any way. Therefore, the photographs can

– 12 –

provide no basis for a false light invasion of privacy claim. *See, e.g., Woodbury* v. *Victory Van Lines*, 286 F.Supp.3d 685, 698 (D. Md. 2017) ("[plaintiff] has asserted in a conclusory fashion that the photograph 'place[d] her in a false light,' . . . but has not asserted facts showing how the image 'attribute[d] to [her] characteristics, conduct or beliefs that are false,' as is required to maintain this claim"); *Barnhart* v. *Paisano Publications, LLC*, 457 F. Supp. 2d 590, 594, 2006 WL 2972570 (D. Md. 2006) (where photograph did not distort plaintiff's true appearance, publication of photograph taken at public event did not constitute false light invasion of privacy, even though plaintiff did not consent to be photographed).

39.     Even if the photographs were substantially misleading (and there is no allegation in the Complaint that they were), there still is no possibility of recovery.

40.     A false light claim requires a defendant to communicate "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Meaney v. Nationstar Mortgage*, 2018 WL 1014927, at *4 (D. Md., Feb. 21, 2018) (quoting *Cambridge Title Co.* v. *Transamerica Title Ins. Co.*, 817 F. Supp. 1263, 1278 (D. Md. 1992)); *Rangarajan* v. *Johns Hopkins Health Sys. Corp.*, 2014 WL 6666308, at *6 (D. Md., Nov. 21, 2014) (same). The Complaint is bereft of any facts to suggest that the Brown Sisters published the photographs to the public at large. This renders the false light invasion of privacy claim against them hopelessly infirm.

### 4. The Complaint Does Not Allege Tortious Interference by the Brown Sisters.

41.     Plaintiffs also do not allege any conduct attributable to the Brown Sisters that could conceivably entitle them to relief for a claim of tortious interference with business relations.

42.     To establish the tort of intentional interference with economic relationships, "the conduct must be wrongful, independent from its effect on the plaintiff's business relationships." *Alexander & Alexander Inc.* v. *B. Dixon Evander & Associates, Inc.*, 336 Md. 635, 656, 650 A.2d 260, 271 (1994). The Court of Appeals defines wrongful conduct as "common law torts and violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith." *Id.* (internal quotations omitted).

43.     The predicate "wrongful conduct" of the Brown Sisters alleged in the Complaint is (i) defamationwhich fails because the Complaint does not attribute the publication of any defamatory statements to them; and (ii) false light invasion of privacy—which fails because the Complaint does not allege that the photos were inaccurate or that the Brown Sisters communicated them to the public at large.

44.     The only other alleged "wrongful conduct," is the Brown Sisters' alleged failure to be licensed as private detectives when they took the photos of the lion. Yet Maryland's Private Detectives Act defines the phrase "[p]rovide private detective services" to mean "to provide, *for compensation*, the service of . . . conducting an investigation[.]" Md. Code Ann., Bus. Occ. & Prof. § 13-101(j)(1)(i)

(emphasis added). An ordinary citizen volunteer who takes photographs at a zoo, and who is not a professional detective working for a fee, commits no crime. And the record is clear that the Brown Sisters acted as uncompensated volunteers. *See* Transcript of Brittany Peet, *PETA*. v. *Tri-State*, No. 1:17-cv-02148-MJG (D. Md. July 31, 2017) (the transcript is forthcoming).

45.     Because Plaintiffs cannot read the requirement of "compensation" out of the Private Detectives Act, they therefore prop up their claims with the supposed "belief" that the Brown Sisters were possibly compensated, by alleging that they were either "compensated *or* reimbursed for expenses." Complaint ¶ 25 (emphasis added). Of course, the distinction between these two possible alternatives is critical, because reimbursement does not implicate the Private Detectives Act at all. But nothing in the record would support a belief that the Brown Sisters received anything other than nominal reimbursement for mileage and admission. They were contacted with the understanding that PETA was looking for "*volunteers*" to document conditions at the facility, with the understanding that PETA "can *reimburse*" for admission and mileage cost if necessary. Exhibit D.

46.     Notably, there is no factual allegations as to the basis or source of Plaintiffs' alleged "information and belief" that the Brown Sisters asked for, were offered, and/or received any compensation. It is therefore particularly troubling that the Plaintiffs would level an accusation of criminal conduct against the Brown Sisters, based on the clearly unsubstantiated (alleged) belief that they did receive "compensation." This disregard of the actual facts in the record can only be viewed

– 15 –

as a blatant, improper attempt, to manufacture claims against resident defendants in order to defeat diversity jurisdiction. *See Barlow* v. *John Crane-Houdaille, Inc.*, 2015 WL 11070882, at *8 (D. Md., Oct. 8, 2015) (in ruling on fraudulent joinder petition, it is appropriate to inquire "into whether the plaintiff is pursuing claims against resident defendants in good faith").

47.     Lastly, even if the Court would credit Plaintiffs' baseless belief that the Brown Sisters were compensated, it still would not salvage Count III. "[T]o establish causation in a wrongful interference action, the plaintiff must prove that the defendant's wrongful or ***unlawful act caused the destruction of the business relationship*** which was the target of the interference." *Kaser* v. *Fin. Prot. Mktg., Inc.*, 376 Md. 621, 629, 831 A.2d 49, 54 (2003) (emphasis added); *View Point Med. Sys., LLC* v. *Athena Health, Inc.*, 9 F. Supp. 3d 588, 615 (D. Md. 2014) (same).

48.     Here, no conceivable causal link exists between the alleged unlawful act (taking pictures without a license) and the alleged business losses claimed by the Plaintiffs. The Private Detective Act allegation is no more than a red herring. It has not been—and cannot be—alleged that Plaintiffs' losses would have been averted if only the photos of the lion had been taken by a fully licensed private detective.

49.     Plaintiffs have not a glimmer of hope to establish that their business relations rise and fall with the vagaries of whether the lion's photographers required (and/or had) certain licenses for one additional reason: this fact is

inherently unknowable by those who conduct business with the Plaintiffs. Whether the Brown Sisters required or had a detective license therefore cannot feasibly be the cause of anyone's decision whether to conduct business with the Plaintiffs.

### 5. The Complaint Does Not State a Claim for Trespass by the Brown Sisters.

50.     There is no possibility that Plaintiffs can successfully establish a claim of trespass against the Brown Sisters.

51.     A trespass is defined as "an intentional or negligent intrusion upon or to the possessory interest in property of another." *Schuman* v. *Greenbelt Homes, Inc.*, 212 Md. App. 451, 475, 69 A.3d 512, 526 (2013) (citation omitted). To establish a case of trespass, Plaintiffs must allege: (1) an interference with a possessory interest in its property; (2) through the Defendants' physical act or force against that property; (3) which was executed without Plaintiffs' consent. *Royal Inv. Group, LLC* v. *Wang*, 183 Md. App. 406, 445, 961 A.2d 665, 688 (2008).

52.     Plaintiffs allege that the Brown Sisters "visited the Plaintiffs' facility under false pretenses." Complaint ¶ 27. But Plaintiffs do not allege that the Brown Sisters were not authorized to enter onto Plaintiffs' property to observe the animals on display. In fact, in the ESA Action, Plaintiff Robert Candy testified that people affiliated with PETA are *not* prohibited from entering Tri-State Zoo. Transcript of Robert Louis Candy at 239:8-9, *PETA* v. *Tri-State*, No. 1:17-cv-02148-MJG (D. Md. July 31, 2017) ("[I] don't say PETA can't come to the zoo. We just ask if they belong to PETA.") (attached hereto as Exhibit E).

53.     Plaintiffs' trespass count rises (and falls) with the assumption that the Brown Sisters obtained consent to visit the zoo by "false pretense." The Complaint is bereft of any facts suggesting that the Brown Sisters were questioned by the Defendants about their identities and purpose of their visit, or affiliation—let alone that they responded by making false or misleading statements.[4]

54.     Even when a cause of action is "not technically termed fraud," compliance with fraud pleading standards is required when the "gravamen" of the cause of action is fraud. *See, e.g.*, *Todd* v. *Xoom Energy Maryland, LLC,* 2016 WL 727108, at *5 (D. Md., Feb 22, 2016). Here, although Plaintiffs' claim is technically termed "trespass," the claim sounds in fraud because it is predicated upon alleged fraudulently obtained consent. *See also, e.g. Murphy* v. *Capella Educ. Co.*, 589 Fed.Appx. 646, 657 (4th Cir. 2014) (since plaintiff "has not made sufficiently particular allegations of such deceptive behavior," claim for false pretense failed as a matter of law).

55.     In order to establish a fraudulent misrepresentation under Maryland law, the plaintiff ordinarily must show: "1) that the defendant made a false representation to the plaintiff; 2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth; 3) that the misrepresentation was made for the purpose of defrauding the plaintiff;

---

[4] Aside from alleging that Plaintiffs have "a sign that clearly states that anyone affiliated with PETA must identify themselves before being admitted," Complaint ¶ 13, Plaintiffs do not allege that the Brown Sisters specifically were asked about their affiliation with PETA, or that the alleged sign is even visible to members of the public who enter the zoo.

4) that the plaintiff relied on the misrepresentation and had the right to rely on it; and 5) that the plaintiff suffered compensable injury resulting from the misrepresentation." *Awah* v. *Transunion*, 2016 WL 3257795, at \*9 (D. Md., June 13, 2016) (citing *Nails* v. *S & R, Inc.*, 334 Md. 398, 415, 639 A.2d 660, 668 (1994)); *accord Thomas* v. *Nadel*, 427 Md. 441, 451 n. 18, 48 A.3d 276, 282 n. 18 (2012); *Sass*, 152 Md. App. at 429, 832 A.2d at 260.

56. Even if a more relaxed pleading standard than fraud pleading is applied, the Complaint falls woefully short of establishing any of these elements. Nothing would even remotely support the conclusion that the Plaintiffs were deceived by the Brown Sisters, or that the Brown Sisters procured entry by anything other than by paying for admission. The basic elements of a "false representation" or "reliance" by the Defendants on anything said by the Brown Sisters are lacking. Because no facts support the conclusory assertion that consent was obtained by false pretense, the trespass count fails as a matter of law.[5]

---

[5] Even assuming consent were obtained by misrepresentation (***although there are no facts to support such an assumption***), this does not salvage Plaintiffs' claim. The Brown Sisters' alleged failure to disclose any alleged affiliation with PETA when they entered Tri-State Zoo is not an interference with Plaintiffs' possessory interests in its facility. *See Desnick* v. *Am. Broad. Companies, Inc.*, 44 F.3d 1345, 1353 (7th Cir. 1995) ("[D]efendants' test patients gained entry into the plaintiffs' premises by misrepresenting their purposes (more precisely by a misleading omission to disclose those purposes). But the entry was not invasive in the sense of infringing the kind of interest of the plaintiffs that the law of trespass protects; it was not an interference with the ownership or possession of land."). Indeed, several courts have held that consent to entry obtained by misrepresentation or a misleading omission is given legal effect. *See, e.g.*, *Food Lion, Inc.* v. *Capital Cities/ABC, Inc.*, 194 F.3d 505, 517-18 (4th Cir. 1999) (applying North and South Carolina trespass laws, the court held that successful resume fraud alone did not constitute trespass, and that such a holding would not

57.     Therefore, Plaintiffs' have failed to allege any possible trespass claim against the Brown Sisters.

### 6. Plaintiffs Have Not Alleged Fraud Attributable by the Brown Sisters.

58.     Plaintiffs also do not allege any conduct attributable to the Brown Sisters that could entitle them to relief for a claim of fraud under Count VI.

59.     Fraud requires a plaintiff to prove:

(1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Ellerin* v. *Fairfax Sav., F.S.B.*, 337 Md. 216, 229, 652 A.2d 1117, 1123 (1995).

60.     In order to seek relief on the ground of fraud, "Maryland courts have long required parties to plead fraud with particularity," *McCormick* v. *Medtronic, Inc.*, 219 Md. App. 485, 527, 101 A.3d 467, 492 (2014) (internal citations omitted), which ordinarily requires that a plaintiff:

identify who made what false [representation], when, and in what manner (i.e., orally, in writing, etc.); why the [representation] is false; and why a finder of fact would have reason to conclude that the defendant acted with scienter (i.e., that the defendant either knew that the [representation] was false or acted with reckless disregard for its

---

protect the "interests underlying the tort of trespass—the ownership and peaceable possession of land"); *see also Keyzer* v. *Amerlink, Ltd.*, 618 S.E.2d 768, 772–73 (N.C. Ct. App. 2005) (holding that private investigators who posed as potential clients in order to investigate whether an attorney was abiding by confidentiality provisions in a settlement agreement, were authorized to enter into attorney's property, and thus, did not trespass, even though attorney's consent to the entry was based on investigators' misrepresentations).

truth) and with the intention to persuade others to rely on the false [representation].

*Id.* at 492-93 (citing *Spaulding* v. *Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013)).

61. The Complaint does not state any facts that suggest that the Brown Sisters committed fraud. Simply alleging that "[a]ll Defendants engaged in fraudulent conduct by entering the premises under false pretexts or conspiring to enter onto the premises by false pretext or active deception," Complaint ¶ 67, does not rise to the level of particularity required to properly plead the elements of fraud. Specifically, the Complaint does not identify what false representations the Brown Sisters allegedly made, to whom or in what manner the Brown Sisters allegedly made false representations, or that the Brown Sisters acted with scienter when allegedly making such false representations, or that they acted with the intention to persuade others to rely on the alleged false representations. The Complaint is also devoid of any factual allegations showing reliance or injury.

62. Accordingly, there is no possibility that Plaintiffs can successfully prove a fraud claim against the Brown Sisters.

### 7. The Complaint Does Not Allege Any Predicate of Unlawful Conduct Attributable to the Brown Sisters on Which to Sustain Any Civil Conspiracy Claim.

63. Finally, there is no possibility that Plaintiffs can successfully prove their civil conspiracy claims, under Count IV, against the Brown Sisters. Plaintiffs have not alleged any conduct attributable to the Brown Sisters that could conceivably entitle them to relief for the underlying torts of defamation, false light,

– 21 –

tortious interference with business relations, trespass, and fraud. *See* Parts I.B.2-6 *supra*; *see also Manikhi* v. *Mass Transit Admin.*, 360 Md. 333, 360 n.6, 758 A.2d 95, 110 (2000) ("[C]onspiracy is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff.") (internal quotation marks and citation omitted).

64.     Indeed, Plaintiff's civil conspiracy allegations are so confused and ambiguous that in support, they recite the same allegations used to support their claim of trespass. *Compare* Complaint ¶¶ 61-62 *with id.* ¶¶ 64-65.

## II.     The Amount in Controversy Exceeds $75,000.

65.     The amount in controversy in this case is well in excess of $75,000. Plaintiffs request—for each count—a "judgment against all Defendants, jointly and severally in an amount not to exceed $74,500." *See* Complaint ¶¶ 54, 57, 59, 62, 65, 69.

66.     Generally, "it is settled law that a plaintiff may aggregate his claims against an opposing party and thereby satisfy the monetary requirement for federal jurisdiction." *Stone* v. *Stone*, 405 F.2d 94, 96 (4th Cir. 1968) (citations omitted). District courts have also recognized "[i]f a plaintiff can properly aggregate the *ad damnums* in two or more of her claims to establish original jurisdiction in federal court, then the defendant in the same suit can do so to effectuate removal." *Connolly* v. *Volvo Trucks N. Am., Inc.*, 208 F.R.D. 600, 601 (N.D. Ill. 2002).

67.     Here, Plaintiffs collectively sue to protect a shared right or undivided interest in Tri-State Zoo, which is "the creation of [Defendant] Robert Candy." *See* Complaint ¶ 12. Further, Plaintiffs purport to assert multiple claims for damages

against each named Defendant "jointly and severally." *See* Complaint ¶¶ 54, 57, 59, 62, 65, 69. Further, even if certain of Plaintiffs' claims for damages are overlapping, damages for Plaintiffs' asserted trespass and fraud claims cannot logically be concurrent with damages for its defamation, false light, and tortious interference claims. Such damages are qualitatively different in nature. Therefore, aggregation of the total amount of damages places the amount in controversy far in excess of $75,000.

68.    Plaintiffs' allegations demonstrate why the "amount in controversy [plausibly] exceeds the jurisdictional threshold." *Dart Cherokee Basin Op. Co., LLC* v. *Owens*, 135 S. Ct. 547, 554 (2014); *see also St. Paul Mercury Indem. Co.* v. *Red Cab Co.*, 303 U.S. 283, 289 (1938) ("It must appear to a legal certainty that the claim is really less than the jurisdictional amount to justify dismissal.").

### III.    All Other Removal Requirements Are Satisfied.

#### A. This Notice of Removal Is Timely.

69.    This Notice of Removal is timely filed. Plaintiffs filed the Complaint on May 23, 2018. PETA filed the Notice of Removal on May 30, 2018, prior to service of any properly joined Defendants. *See* 28 U.S.C. § 1446(b)(1).

#### B. Consent to Removal is Not Required in This Case.

70.    For purposes of removal based on diversity jurisdiction under 28 U.S.C. § 1332(a) and pursuant to 28 U.S.C. § 1446(b), defendants who have been properly joined and served must consent to removal. But no defendant has yet been served. (A defendant may remove prior to service. *See Caillouet* v. *Annapolis Yacht Co. LLC*, 2016 WL 8737484, at *5 (D. Md., Aug. 5, 2016)).

71.     Defendants Holly Brown and Casey Brown are not properly joined in this action, and therefore their consent to removal is not required.

72.     By filing this Notice of Removal, PETA does not waive any defense that may be available to it and reserves all such defenses.

## CONCLUSION

WHEREFORE, Defendant PETA removes this action from the Circuit Court of Allegany County, Maryland to the United States District Court for the District of Maryland.

Date    May 29, 2018                              Respectfully submitted,

Conor B. O'Croinin (#28099)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, Maryland 21202
(410) 332–0444; (410) 659–0436 (fax)
cocroinin@zuckerman.com

*Counsel for Plaintiff People for the Ethical Treatment of Animals*