# EXHIBIT C

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
## BALTIMORE DIVISION

PEOPLE FOR THE ETHICAL
TREATMENT OF ANIMALS, INC., et al.

                                           CASE NO. 1:17-cv-02148-MJG

v.

TRI-STATE ZOOLOGICAL PARK
OF WESTERN MARYLAND, INC.
_____

DEFENDANTS' ANSWERS TO PLAINTIFF'S INTERROGATORIES

From:  Defendants

To:      Plaintiff

The language used may also be that of counsel as adopted by the answering party.

**Interrogatory No. 1.          Please identify all persons who are likely to have personal knowledge of any fact alleged in the Complaint or your Answer, and state the subject matter of the personal knowledge possessed by each such person.**

Answer No. 1.          Please see all volunteers and other persons listed in the answer to Interrogatory No. 2, infra. In addition to those persons, the following have some degree of knowledge:

a.      Gloria McFadden, DVM, who is the regular inspector of the facility for USDA. Her records are being produced to the extent that they are in the hands of the Defendants.

b.      Dr. John (Tim) Fox of Western Maryland Animal Hospital, 11024 Old Mt. Savage Road, Lavale, Maryland, has been the attending veterinarian for much of the recent care of the animals. He devised care plans for many of the animals at the facility.

c.      Dr. Shepard of Big Cat Rescue in Camelot PA, 724-437-7838.

d.      Dr. Ryan of Westminster Maryland, "Feathers Scales & Tails", 410-876-0244.

      e.      Bill Walters at the Maryland Zoo in Baltimore has served as a consultant. 443-992-4595

      f.      Dr. Adams of Hoofstock & Birds has served as a consultant, 304-676-5987.

      g.      Dr. M. Cranfield from the Maryland Zoo has done consults for emergencies.

      h.      Dr. Bergman at the New Jersey Zoo does east coast big cat rescues and has done consultations, 609-618-8655.

**Interrogatory No. 2.**      **Identify all current and former Tri-State employees and volunteers by name, job title, beginning and ending dates of employment or period of volunteering, and general duties and responsibilities, since May 1, 2011. For former employees and volunteers, please also provide their last known address and contact information.**

      a.      Robert Candy, Owner/Director for 16 years. Handles and has knowledge of the construction of the animal enclosures, the care of the animals, the feeding of the animals and cleaning of facilities, and daily coordination of volunteer activities.

      b.      Tim Squires is a retired Federal law enforcement officer who serves as a volunteer from 2006 to present. He has knowledge of county code enforcement issues, construction of animal enclosures, maintenance, the care of the big cats, and various odd jobs that he has done as needed. He is Vice President of Animal Park Care & Rescue.

      c.      Ginger Squires has been a volunteer since 2006. She is on the Animal Park Care & Rescue Board. She handles issues for community involvement and artwork.

      d.      Jessica Simmons is Secretary of Animal Park Care & Rescue. She has been trained in various activities including feeding, animal care, and accounting. She has been a volunteer since 2003.

      e.      Derek Simmons is a volunteer since 2017, and provides general help around the facility as needed.

      f.      Nicky Cramer has been a volunteer since 2003. Provides public relations and communications helps and helps with various other programs.

      g.      Bonnie Keller House has been a volunteer since 2005. She does animal care and feeding, and has experience in rescue of animals and communications. She has done animal transport for small animals (birds and reptiles).

h.      Rella Moon has been a volunteer since 2009. General care, feeding, animal care and husbandry, construction, and security. Is in residence at the zoo.

i.      Richard Donovan and Rita Sneathen, volunteers since 2016, help with food prep and delivery.

j.      John Harr has been a volunteer since 2005. He is also a local volunteer firefighter. He does maintenance, animal care, feeding, big cat feeding and cleaning, construction, and other general duties. He has done security work and has been provided a residence on the property.

k.      Jen Harr has been a volunteer from 2006 to 2017, doing feeding, care, events coordinating.

l.      Kristine Hoffengardner: Has been a volunteer since 2017. Does feeding, cleaning, general duties. Is in residence on the property and does security work for the zoo (has a military background).

m.      Kathy Moran: Shelter and rescue experience. Volunteer from 2013 to 2017. Feeding and cleaning, some big cat training and feeding.

n.      Jason Woolard has been a volunteer since 2012. He works at 84 Lumber and does construction and maintenance work  and some big cat care and feeding.

o.      Lynn & Mack McGuire have been volunteers since 2011. They take care of the birds and other general duties.

p.      Darcy Bowen has been a volunteer since 2003. Has training as a veterinary technician and rehab specialist. Does consults, animal care, and transportation.

q.      Susan Miller has been a volunteer since 2003. Her full time Federal employment is with NIH in the primate area. She is a veterinary technician, and a CPBS certified primate behavior specialist.  She does consultations, animal care and inspections.

r.      Dr. Lisa Ferguson has been involved since 2014.   She is a big cat expert, a rehab specialist, and does consultations and animal care.

s.      Betty Acks has been a volunteer since 2017. She is a retired county rehabilitation specialist. She does consultations and animal care.

t.      Rick and Lynn Bibbee of the Modern Woodmen have been volunteers since 2014. They do fundraising, general duties, and various volunteer projects, including the annual "Join Hands" day.

u.      Brian Booth and Wendy Booth have been volunteers since 2014. They do electric, plumbing, general duties and maintenance, and are trained in feeding the big cats.

v.      Pam Rose has been a volunteer since 2009. She is the treasurer of the Animal Park Care and Rescue group and does consults and computer assistance.

w.      There have been various volunteer organizations that have donated time to the facility over the years, including college groups and leadership classes, Frostburg State University, Allegany Community College, Potomac State College, 4H Groups, etc.

**Interrogatory No. 3.      Identify each lion, tiger, and lemur Tri-State has possessed from May 1, 2011 to the present, including by providing the name, sex, date of birth, death (if applicable), pedigree (i.e., information regarding the lion, tiger, and lemur's parents), social grouping, microchip numbers, if any, dates you possessed the lion, tiger, and lemur, and current location of each lion, tiger, and lemur.**

Answer No. 3.

General objection to the length of time during which the Plaintiff requests records. Defendants state that 2013 (the last 5 years) is more than an adequate time frame during which to evaluate the care of the animals. This case has nothing to do with animals in the past—only with whether there is a "take" occurring in respect to those animals presently at Defendants' facility. Without waiving objection, since 2013 the following animals of the sort described have resided at the facility:

I.      LIONS

a.      A lion named Mbube (Bu) resided at the facility from March 21, 2004 to December 15, 2016. He came to the facility as a rescue at 6 days of age. He was euthanized due to cancer. He was not an endangered species of lion to the best of the Defendants' knowledge.

b.      A lioness named Peka came to the facility as a rescue on April 23, 2011, at two days old. Her mother was unable to nurse her. She is presently in good health and located at Tri State Zoological Park. She is not known to be an endangered species of lion.

4

II.      Tigers

a.       Kahn was a generic male tiger born in March 2003. He was brought to the facility in June of 2003 as a rescue/donation. He died in November of 2013. The vet determined the cause of death as heart failure.

b.       Cheyenne is a generic female brought to the facility in June of 2003 as a donation/rescue, born in March 2003. She is presently at the facility.

c.       Three tigers, all generic, were born at the facility to Cheyenne on March 24, 2007. Kumar, a male, Cayenne, a female, and India, a female. All are presently at the facility.

d.       Mowgli, a male "white tiger", which is by definition generic, was born on July 31, 2009, and was a donation/rescue to the facility on August 16, 2009. He is presently at the facility.

III.     Lemurs

a.       Bandit was a male lemur born at the facility on August 18, 2005. He went to a foster home but then returned to the zoo on May 21, 2009. He died on January 15, 2018. He died of cancer during a visit to the veterinarian. It was his second visit to the veterinarian on that day, and he had been under veterinary care for several months prior to his death. The tumor was a degenerative tissue disease affecting the mouth and sinus cavities and was not operable. No necropsy was performed but his remains are presently frozen and preserved.

b.       Alfredo is a male lemur of unknown date of birth. He is believed to be 8 or 9 years of age. He was brought to the zoo on June 11, 2012 on loan from another facility as a companion for Bandit. Since Bandit's death, the zoo is exploring a transfer (with permission of the lawful owner) to the Maryland Zoo.

**Interrogatory No. 4.      Identify and provide contact information for each veterinarian used relating to the health of any lion, tiger, and/or lemur that is or was in your possession, custody, or control from May 1, 2011 to the present, including by identifying the time period during which each veterinarian worked with such lions, tigers, and/or lemurs.**

Answer No. 4.      Objection as overly broad insofar as a statement of each treatment and date of treatment is sought. Objection as overly broad in the time requirements, as the only question in this case is whether the animals presently in Defendants' care are being subjected to a "take" or not. Veterinarians who treated the various animals have been listed in the Answer to Interrogatory No. 1. Furthermore, veterinary records in the possession of the Defendants are being produced from 2013 onwards, and Plaintiff is referred to those records.

**Interrogatory No. 5.       Identify and provide a complete and detailed description of each death of any lion, tiger, or lemur in your possession, custody, or control from May 1, 2011 to the present, including veterinary care provided, cause of death, and whether a necropsy was performed.**

Answer No. 5.       Objection as to overbreadth and relevance. Without waiving objection, since 2013, the tiger Kahn, the lion Mbube, and the lemur Bandit have died.

a.       Kahn (Tiger): Died of heart failure according to veterinarian. He died suddenly. No necropsy was performed but a report was completed. He died on November 24, 2013.

b.       Mbube (Lion): Was born in March 2004 in Maine. Came to the zoo the same month. He was euthanized as a result of cancer and age in December of 2016. No necropsy was performed. He was under the care of a veterinarian. Records are being produced.

c.       Bandit (Lemur): died on January 15, 2018, of cancer. No necropsy was performed. He was under the care of a veterinarian.  Records are being produced.

**Interrogatory No. 6.       Provide a complete, separate, and detailed description of the enrichment provided for (1) lions, (2) tigers, and (3) lemurs in your possession, custody, or control, including a description of how and how often such enrichment is changed or varied.**

Answer No. 6.       Plaintiff is referred to the enclosure descriptions in the Answer to Interrogatory No. 8.  It should be noted that constant variation of the environment is not necessarily beneficial for the big cats. Also refer to Lemur Plan being produced as part of the document production.

**Interrogatory No. 7.       Provide a complete, separate, and detailed description of each transfer to or from Tri-State of a lion, tiger, or lemur to or from a third party, including the name and age of the animal at the time of transfer, the date of the transfer, the sending or recipient party, and the dollar amount, or any other consideration, paid or received by Tri-State for such transfer, if any.**

Answer No. 7.       Objection for overbreadth and relevance. Without waiving objection, the transfers have already been described. No transfer of any lion, tiger, or lemur has been for consideration. Animals are rescued, donated, or loaned for care.  Records are being produced that show the origins of all animals. As for the animals presently in the possession of Tri State Zoological Park:

a.       The lemur Alfredo came from Natural Bridge Zoo in Virginia by loan in 2012. He was intended to be a long term or indefinite loan but legally title still

resides in the transferring facility. He is believed to be 8 or 9 years old now, so was probably 2 or 3 years old at time of transfer.

b.      The lioness Peka came to the facility in 2011 from Keith Warren of Brookville, Indiana. She was a newborn at the time, just a few days old. Peka's mother was unable to nurse.

c.      The tiger Mowgli came to the facility in 2009 from Natural Bridge Zoo as a newborn.

d.      The tiger Cheyenne came from Space Farms Zoo in New Jersey on June 13, 2003 as a cub.

**Interrogatory No. 8.      Provide a complete, separate, and detailed description of the enclosures in which you house or housed lions, tigers, or lemurs, including whether the enclosure is fully indoors or both indoors and outdoors, the exact dimensions of any indoor and outdoor sections, and the dates in which the lions, tigers, or lemurs are or were housed in each enclosure.**

Answer No. 8.

a.      The tiger area has a "pool" of 150 feet by 50 feet. The first area is 75 by 50. The second area is 75 by 25, and the third area is 75 by 25. It is of a depth of 4 to 12 feet with a build up on the top. There is a divide in the center with a bridge for the public to look over. All areas are visible to the others, with access between areas if opened. The areas can be arranged into separate or unified habitats. There is indoor housing on an upper level. Area 1 has an enclosed areas of 12 x10 and two other areas at 10x8, and an enclosed sitting area that leads to the lower level of 4x8. Area 2 has enclosed areas of 10x12 and an 8x12 outdoor room. Area 3 has enclosed areas of 10x12 and an 8x12 outdoor room.  There are 8x10 platforms in outdoor areas 2 and 3, and multiple platforms in area 1.  There are water pools in area 1 of 16 feet. It is a planned project to replace the pool.  In Area 2 there are 8 foot diameter metal tubs, and in Area 3 there is an 8 foot diameter metal tub.  The substrates are concrete, wood, dirt, mulch, sand, and gravel.  For enrichment there are trees, Christmas trees, tires, and other miscellaneous items provided.

b.      The lion area has a total area of 140 feet by 75 feet. It is dividable when necessary to two areas of 50 by 75 and 90 by 75. There are grass and dirt areas. On side 1 there are two enclosed housing areas of 5x8 each, and one open enclosed area of 10x8. This is attached to a private area with brick and dirt flooring. In side 2, 20x10, there are two closed rooms of 10x10.  These are attached to a private area of 20x8 block patio and an 8x8 sitting area. There are separate areas for movement and containment.  There are 10x10 platforms on each side area.  The substrates are dirt, grass, gravel, taller growth for hiding, concrete blocks, and wood. There are shade trees on both sides. The area is protected from public access by a

10 foot fence with a minimum of 3 feet distance. There is viewing only from the front of the enclosure.

c.      The lemur enclosure is 16 feet in diameter and is circular. It is 16 feet in height and enclosed at the top. The housing (shelter) unit is 16 by 8 feet enclosed with windows, at a height of 7 feet. There is closeable access to the outside area. There are two smaller heated housing areas inside. There is natural growth and vines in the enclosure. There are two outer platforms of 2 feet by 8 feet. The entire enclosure is protected from the public by a fence 8 feet in height, at four feet distance from the enclosure.

**Interrogatory No. 9.      Identify each and every document or other piece of evidence relevant or potentially relevant to PETA's claims which has been lost, destroyed, or cannot be found. For each such document or other piece of evidence, state the date on which it was lost or destroyed and whether a copy was made.**

Answer No. 9.      Objection for vagueness as to what would be relevant to PETA's claims. Without waiving objection, no documents have been lost or destroyed since the fire of 2006. None of that documentation is believed to be relevant to PETA's claims.

**Interrogatory No. 10.      If you contend that Plaintiff has made any admission or declaration against interest in connection with this matter, please describe the nature of such admission or declaration and identify all documents relating to such admission or declaration.**

Answer No. 10.      None as the term is defined by law.

**Interrogatory No. 11.      Please describe your efforts to preserve documents potentially relevant to, and discoverable in, this litigation, including your efforts to implement a "litigation hold" of electronically stored information ("ESI") from the time that you were put on notice of the potential for legal action or litigation to be initiated by Plaintiff.**

Answer No. 11.      The Defendants have not destroyed any documents relevant to the claims made by PETA. The Defendants do not regularly purge, delete, or otherwise discard documents, therefore no "litigation hold" was implemented. However, no documents would have been discarded since the time of PETA's notice letter sent to the Department of Inland Fisheries and Wildlife and copied to the Defendants.

**Interrogatory No. 12.      Please identify all persons answering these interrogatories, assisting with answering these interrogatories, or that you consulted in answering these interrogatories and identify all documents that you relied on or referenced to answer these interrogatories.**

Answer No. 12.        Only Robert Candy, in consultation with counsel.

<u>OATH</u>

I HEREBY swear or affirm under penalties of perjury that the foregoing answers are true and correct to the best of my knowledge, information and belief.


_____                              _____
Date                                                              ROBERT CANDY

Answer No. 12.        Only Robert Candy, in consultation with counsel.

<u>OATH</u>

I HEREBY swear or affirm under penalties of perjury that the foregoing answers are true and correct to the best of my knowledge, information and belief.

02/19/2018
_____
Date

_Robert L. Candy_
_____
ROBERT CANDY