## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### –Northern Division–

ROBERT CANDY, *et al.*,

      *Plaintiffs*

    –v–

PEOPLE FOR THE ETHICAL
TREATMENT OF ANIMALS, INC. *et
al.*,

      *Defendants.*

Case No. MJG 18–1549

## DEFENDANT PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS' OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND

On May 23, 2018, Plaintiffs brought this action against People for the Ethical Treatment of Animals, Inc. ("PETA"), and several of its attorneys, employees, and volunteers, in the Circuit Court for Allegany County, Maryland. Compl. (ECF No. 2). Plaintiffs allege various torts that relate to PETA's efforts to monitor and report on the conditions at the facilities operated by Tri-State Zoological Park of Western Maryland, Inc. ("Tri-State") and Animal Park, Care & Rescue, Inc. ("Animal Park") ("together "Tri-State Zoo"). Plaintiffs' claims—which are intended to stifle the exercise of First Amendment rights and silence critics of Plaintiffs' facility—directly relate to PETA's public interest campaigns; complaints to government agencies; investigations that it undertook for the purposes of litigation; and a citizen lawsuit brought pursuant to the Endangered Species Act, 16 U.S.C. §§ 1531-1544, which is

pending before this Court ("ESA Action");[1] as well as to statements allegedly made by Defendant Kristine Staser, who has no official affiliation with PETA.

On May 29, 2018, before any of the Defendants in this action were served, Defendant PETA timely removed this action under the doctrine of fraudulent joinder. Notice of Removal (ECF No. 1).[2] Plaintiffs have not alleged any possible claim against two Maryland citizens—Holly Brown and Casey Brown (the "Brown Sisters")—who were joined as Defendants for the sole purpose of destroying diversity of citizenship. *Id.* ¶ 2. Plaintiffs have now moved to remand this case to state court, Pls.' Mot. to Remand ("Motion") (ECF No. 11), without meaningfully addressing the central bases for Defendant PETA's Notice of Removal: that the Brown Sisters were fraudulently joined and that an aggregation of the total damages sought is in excess of $75,000. Plaintiffs have also not amended their Complaint to cure their patently deficient allegations against the Brown Sisters or to assure the Court that they do not seek damages in excess of the amount in controversy requirement.

As articulated in PETA's Notice of Removal and as further detailed below, this action is properly before this Court. There is complete diversity of citizenship between Plaintiffs and all properly joined Defendants, and the amount in

---

[1] Plaintiffs expressly acknowledge that some of the claims in this case "are somewhat collateral to the Endangered Species Act claim that PETA has brought in this Court." *See* Mot. ¶ 5.

[2] Plaintiffs have yet to serve any of the Defendants in this action.

6469099.1

controversy exceeds $75,000. Accordingly, Plaintiffs' motion to remand must be denied.

## ARGUMENT

## I.    The Brown Sisters Are Not *Bona Fide* Defendants

Of the eight defendants, only two are Maryland residents: Casey Brown and Holly Brown. But Plaintiffs' claims against the Brown Sisters arise from one allegation: that in 2017, the Browns took photographs of the now-deceased lion "Mbube." *See* Compl. ¶ 27.[3] There is no dispute that taking photographs of the lion caused Plaintiffs no harm. And a brief analysis of each of Plaintiffs' causes of action shows that the Brown Sisters are not *bona fide* defendants. Indeed, Plaintiffs cite no authority that would allow the Court to conclude otherwise.

### A.  Count I (Defamation)

Because the Complaint does not identify any defamatory statements by the Brown Sisters, Count I against them is fatally defective. *Gohari v. Darvish*, 767 A.2d 321, 327 (Md. 2001) (defamation requires, among other things, that the defendant made a defamatory statement to a third person). Plaintiffs make no reference to defamation in their Motion.

### B.  Count II (False light)

An allegation of false light invasion of privacy "must meet the same legal standards as an allegation of defamation." *Piscatelli v. Van Smith*, 35 A.3d 1140, 1146-47 (Md. 2012). Since no defamation claim has been stated against the Brown Sisters, Plaintiffs' false light claims fails as a matter of law. In a futile attempt to

---

[3] Mbube died in 2016.

– 3 –

justify their claim, Plaintiffs contend that their false light claim is based on "imagery, reports, and audio recordings" that the Brown Sisters allegedly "related . . . to PETA." Mot. ¶ 14. The contention is spurious. The only things the Complaint alleges that the Brown Sisters "related" to PETA are photos of the lion. Compl. ¶¶ 27, 30. The Complaint makes no reference to any "reports" and "audio recordings" the Brown Sisters supposedly made or provided to anybody—let alone that any such materials were false or misleading.

Furthermore, Plaintiffs ignore that a false light claim does not arise from defendants having provided allegedly false materials to a single entity such as PETA. A false light defendant must communicate the allegedly false matter "to the public at large." *Cambridge Title Co. v. Transamerica Title Ins. Co.*, 817 F. Supp. 1263, 1278 (D. Md. 1992). Because the Complaint does not allege that the Brown Sisters communicated anything, Count II fails for this additional reason.

### C. **Count III (Tortious Interference)**

The elements of a cause of action for tortious interference with business relations or prospective advantage are: "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiff; (3) done to cause damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) damage resulting." *Kwang Dong Pharm. Co. v. Han*, 205 F. Supp. 2d 489, 496 (D. Md. 2002) (citing *Natural Design, Inc. v. Rouse Co.*, 485 A.2d 663, 675 (Md. 1984)). Plaintiffs argue that the Brown Sisters acted "knowing and intending that it would cause injury to the Plaintiffs." Mot. ¶ 14. This is misleading.

No such allegation regarding the Brown Sisters' state of mind is made in the Complaint. Nor does the Complaint contain any facts that would support such an allegation.

Count III is defective for at least one additional reason. To state a claim for tortious interference, "an individual must allege more than a disruption of a future relationship to a yet to be determined party." *Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535, 542 (D. Md. 2006). Plaintiffs "must identify a possible future relationship which is likely to occur, absent the interference, with specificity." *Baron Fin. Corp. v. Natanzon,* 471 F. Supp. 2d 535, 546 (D. Md. 2006) (citing Maryland law); *Mixter v. Farmer*, 81 A.3d 631, 638 (Md. Ct. Spec. App. 2013). The Complaint fails to identify any specific future business relationships that were lost because the Brown Sisters took photographs of Mbube.

### D. Count IV (Civil Conspiracy)

On its face, Count IV does not even mention a civil conspiracy. Rather, it states: "The Defendants trespassed by deception, subterfuge, or fraud upon the property of the Plaintiffs and did so without privilege and with malice, in order to obtain information to which they had no right." Compl. ¶ 61. Plaintiffs' attempt to explain away the confusion fares no better. Purportedly, "what gives rise to the claims of civil conspiracy" against the Brown Sisters is that they provided "imagery, reports and audio recordings to PETA, knowing and intending that it would cause injury to the Plaintiffs." Mot. ¶ 14. As previously discussed, the Complaint makes no such allegation. The sole conduct of which the Brown Sisters are accused is

taking photographs of a lion. This allegation cannot sustain a civil conspiracy claim against them.

### E.  Count V (Trespass)

Plaintiffs allege that the Brown Sisters entered Tri-State Zoo "despite a clear sign that informs persons working for animal rights group that they must identify themselves to zoo staff." Mot. ¶ 13. This allegation falls far short of establishing a trespass. Requesting identification is not tantamount to prohibiting entry. The Complaint does not allege that the Brown Sisters were prohibited from entering, or that any sign alerted them that consent to enter would be revoked or denied if they identified themselves as a PETA volunteer. Nor is it alleged that it was the policy of Plaintiffs' staff to eject persons identifying themselves as such. Indeed, the Complaint is silent as to what (if anything) would have occurred had the Brown Sisters identified themselves as PETA volunteers. Therefore, the alleged existence of the sign is a red herring. Since nothing alerted the Brown Sisters that PETA volunteers would be denied entry, they were presumptively granted permission to enter, like any other zoo visitor.

Surely, if Plaintiffs did not consent to certain types of persons entering the zoo, they would know how to do so, with a clear no-trespassing sign, denying them entry. Plaintiffs did not do so, and their attempt to transform a sign requesting zoo visitors to state whether they work for an animal rights group into a trespass prohibition, does not withstand scrutiny.

6469099.1

In any event, the Complaint does not identify any invasion of a property interest resulting from the Brown Sisters' visit to the zoo, as required to make out a tort of trespass to land. *See, e.g., Keyzer v. Amerlink, Ltd.*, 618 S.E.2d 768, 773 (N.C. Ct. App. 2005). The question of whether the Brown Sisters should have identified themselves, and the assumption—nowhere stated in the Complaint—that consent would have been revoked if they did, is irrelevant. *See Baugh v. CBS, Inc.,* 828 F. Supp. 745, 757 (N.D. Cal. 1993) ("In a case where consent was fraudulently induced, but consent was nonetheless given, plaintiff has no claim for trespass."); *Martin v. Fidelity & Casualty Co. of New York,* 421 So.2d 109, 111 (Ala. 1982) ("'[A]n action for trespass . . . will not lie unless plaintiff's possession was intruded upon by defendant without his consent, even though consent may have been given under a mistake of facts, or procured by fraud . . . .'") (citation omitted); *American Transmission, Inc. v. Channel 7 of Detroit, Inc.*, 609 N.W.2d 607, 614 (Mich. Ct. App. 2000) ("Although Stern misrepresented her purpose, plaintiffs' consent was still valid because she did not invade any of the specific interests relating to the peaceable possession of land that the tort of trespass seeks to protect").

Because the Complaint does not (and cannot) allege that taking photographs of Mbube interfered with Plaintiffs' ownership or possession of the land, it does not support the tort of trespass.

### F. Count VI (Fraud)

To recover for a claim of fraud or intentional misrepresentation under Maryland law, a plaintiff must show, among other things, (1) that the

plaintiff relied on the misrepresentation and had the right to rely on it, and (2) that the plaintiff suffered compensable injury resulting from the misrepresentation. *Beck v. Peiffer*, 2012 WL 2711253 (D. Md., July 6, 2012). The element of (or even the word) reliance is not pleaded anywhere in the complaint. Nor does the Complaint establish that Plaintiffs suffered a "compensable injury" caused by the Brown Sisters taking photographs of a lion. Even without considering all the additional defects of Count VI previously identified, *see* Notice of Removal, ECF No. 1 ¶¶ 58-62, Plaintiffs cannot state a fraud claim against the Brown Sisters.

## II.     The Amount in Controversy Exceeds $75,000

By pleading six separate ad damnum clauses of $74,500, Plaintiffs have set the amount in controversy well above the jurisdictional minimum. Comp. ¶¶ 54, 57, 59, 62, 65, 69. This Court has held that separate *ad damnum* clauses may be aggregated to determine the amount in controversy when the claims at issue are "premised on a distinct set of facts or circumstances." *Rojas-Roberts v. Ocwen Loan Servicing, LLC*, 2015 WL 5047494 at *3 (D. Md., Aug. 25, 2015). In that case, the court found that the jurisdictional minimum had been satisfied by adding plaintiff's negligence claim (Count III) for $75,000 to its detrimental reliance (Count I) and violations of the Maryland Consumer Protection Act (Count II) claims for $75,000. *Id*. Unlike claims that constitute alternate theories of liability, the court held that such an aggregation was proper to determine the amount in controversy because sustaining the allegation necessary to prove Count III "would require an inquiry into facts and circumstances distinct from the issue" that Counts I and II were based on. *Id*. As noted, aggregation of at least two of Plaintiffs' claims in this case is

proper because, like the claims in *Rojas-Roberts*, Plaintiffs' claims for defamation and trespass are clearly premised on a distinct set of facts or circumstances.

Indeed, aggregating *ad damnum* clauses is necessary under Maryland law because Maryland allows separate recovery for compensatory damages when "the 'aggregate of the operative facts' presented states more than one claim which can be separately enforced," *Beall* v. *Holloway-Johnson*, 130 A.3d 406, 419 (Md. 2016), and the plaintiff's injuries arise under "separate, unique transactions," *id*. Put differently, successful plaintiffs are entitled to separate recovery for each alleged injury that arises from distinct legal theories premised on a different set of facts. In order to account for the full amount of potential recovery, aggregation for the purposes of determining the amount in controversy is necessary. *See Johnson v. Xerox Educ. Sols. LLC*, 2014 WL 5361302 at *4 (D. Md., Oct. 20, 2014) (aggregating two of Plaintiff's claims—under which plaintiff could potentially recover separate damages—where each claim asserted its own injury and request for compensation: one claim was for negligent services and thereby inflating the interest on Plaintiff's student loan, and a second claim was for defamation, libel, and slander based on allegations that the Defendants falsely reported that Plaintiff was delinquent on his student loan).

Other courts have recognized that "[w]here a plaintiff alleges separate ad damnum amounts with respect to multiple counts, the amount claimed in each count is properly added together to determine the amount in controversy." *See, e.g.*, *McClendon* v. *Liberty Nat. Life Ins. Co.*, 2013 WL 5913850, at *3 (M.D. Ala., Nov. 4,

6469099.1

2013) (citing *Snyder* v. *Harris*, 394 U.S. 332, 335 (1969)). In *McClendon*, the plaintiff pled two separate ad damnum clauses for "compensatory and punitive damages in an amount not to exceed $74,500.00" for her wrongful termination claim as well as her breach-of contract claim. *Id.* The court found that the jurisdictional minimum had been satisfied, because "Plaintiff request[ed] damages not to exceed $74,500.00 for each claim, [and] the aggregate damages exceed $75,000.00 . . ." Id. Just like the plaintiff in McClendon, the Plaintiffs in this case have also requested damages not to exceed $74,500 for each claim, including for claims like defamation and trespass, where damages are so qualitatively different in nature, they "cannot logically be concurrent." Notice of Removal, ECF No. 1 ¶ 67.

Here, Plaintiffs seek damages against each named Defendant "jointly and severally" for multiple counts that arise from unique transactions and are capable of being separately enforced. Each of Plaintiffs' distinct legal theories concludes with a demand for damages. For example, Plaintiffs' claim for defamation arises from various statements PETA made in the ESA Action, on PETA's website, and to various law enforcement agencies, *see* Compl. ¶¶ 29-36, 40, 43-44, 47-54, whereas Plaintiffs' claim for trespass allegedly arises from PETA's agents entering Tri-State Zoo, *see id.* ¶¶ 46, 63-65. Plaintiffs' potential award under the defamation and trespass counts would therefore not be limited to a single recovery.

Plaintiffs disavow their damages theories to force remand. They contend that their claims stem from "the same general set of facts." Mot. ¶ 5. But that explanation does not change the fact that Plaintiffs' potential award under the

6469099.1

defamation and trespass counts are not mutually exclusive. In other words, because the underlying allegations make clear that Plaintiffs' purported injuries are not based on the same facts or transaction, Plaintiffs are not limited to a single recovery for all counts. *Compare* Compl. ¶¶ 48, 53 (specifically alleging that "Plaintiffs have suffered reputational injuries from [Defendants'] false [and defamatory] statements" and that such statements "exposed the Plaintiffs to public hatred, contempt, scorn, and ridicule, and discouraged others from having a good opinion of the Plaintiffs") *with id.* ¶ 63-65 (alleging no specific injury as a result of Defendants' purported trespasses to Plaintiffs' land) and *Richardson v. Boato,* 114 A.2d 49, 51 (Md. Ct. Spec. App. 1955) ("in cases of trespass, even in the absence of a showing of actual detriment, the law presumed an injury for violation of the absolute right"). Therefore—regardless of whether "[i]n pleading the *ad damnum* portion of [Plaintiffs'] Complaint," Plaintiffs now purport to have "followed Maryland Rule 2-305," Mot. ¶ 3—as pled, Plaintiffs have requested relief for separate counts, which, if successful, would entitle them to separate damage awards. Thus, Plaintiffs demand a sum of some multiple of $74,500 in excess of the jurisdictional threshold.

Lastly, Plaintiffs have made no affirmative representations that they do not seek damages in excess of the jurisdictional amount. To the contrary, Plaintiffs forecast that they will seek damages in excess of $75,000 by amending their Complaint. Mot. ¶ 10 ("[A] Maryland Circuit Court is not even permitted to construe the Complaint as seeking damages in excess of that required for diversity

6469099.1

jurisdiction by this Court, and would be bound by that statement at trial, *subject of course to the possibility of later amendment*." (emphasis added)).

In any event, the Court does not need to wait for Plaintiffs to amend their complaint. The complaint already seeks damages in excess of $75,000.

## CONCLUSION

For the foregoing reasons, PETA respectfully requests that Defendants' Motion to remand this action to the Circuit Court of Allegany County, Maryland, and their request for attorney's fees be denied.[4]

Date     July 5, 2018            Respectfully submitted,
        Baltimore, Maryland

*/s/ Conor B. O'Croinin*
Conor B. O'Croinin (#28099)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, Maryland 21202
(410) 332–0444; (410) 659–0436 (f)
cocroinin@zuckerman.com

*Counsel for Defendant People for the Ethical Treatment of Animals*

---

[4] In the unlikely event of remand, an award of attorney's fees is not warranted due to the objectively reasonable basis for removing the case. *See Smith v. Westminster Mgmt., LLC,* 292 F. Supp. 3d 645 (D. Md. 2018).

6469099.1